IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ARTHUR ALEXANDRA WEBSTER**                                              **PLAINTIFF**

**VS.**                                                      **CIVIL ACTION NO. 3:19-cv-97-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                                      **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying the application of Arthur Alexandra Webster for benefits under the Social Security Act. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.

The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard oral argument, finds the Commissioner's decision denying benefits should be affirmed.

## FACTS AND PROCEDURAL HISTORY

On March 19, 2018, Arthur Alexandra Webster filed his application for benefits. After the application was denied at the lower levels, a hearing was held before an administrative law judge ("ALJ") on January 18, 2019. The ALJ issued his unfavorable decision on February 6, 2019, and the Appeals Council denied review. The case is now before this court on appeal.

With his appeal, the plaintiff argues the ALJ erred as to four separate issues. Specifically, he argues the ALJ erred when he: (1) failed to order a consultative examination; (2)

1

failed to incorporate all of the plaintiff's limitations in the hypothetical scenario provided to the vocational expert; (3) gave a non-examining physician's opinion greater weight than one who examined him; and (4) failed to consider the plaintiff's VA rating decision. The court will address each of these issues in turn.

## LAW AND STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434(5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by

the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process. The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991). First, claimant must prove he is not currently engaged in substantial gainful activity. Second, claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." At step three, the ALJ must conclude claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. Fourth, claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work. If claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education, and past work experience, that he is capable of performing other work. 20 C.F.R. § 404.1520 (2019).  If the Commissioner proves other work exists which claimant can perform, claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse,* 925 F.2d at 789.

## DISCUSSION

1. *The Consultative Examination*

With his first argument, the plaintiff contends the ALJ failed to develop the record.  In his decision, the ALJ found the plaintiff capable of "light work . . . except that he can engage in

occasional climbing and balancing. He is further limited to routine, repetitive tasks with occasional public contact." According to the plaintiff, there was no support in the record for this residual functional capacity ("RFC") finding. In support of this argument, the plaintiff points to language from the state agency physician's report upon which the ALJ relied. The plaintiff interprets the physician's report as much more restrictive than the RFC, but this court does not agree. The state agency physician wrote:

> The claimant retains the mental capacity to understand and carry out instructions for learning to perform routine repetitive tasks. Mental capacity for maintaining attention and concentration for two-hour periods is sufficient for completing work tasks without excessive interruption from psychological symptoms. The claimant can interact adequately on a limited basis, receive non-confrontational supervision, and make mental adaptions to complete unskilled tasks in a work setting, especially those requiring minimal interaction with others. The claimant retains mental capacity to complete unskilled work tasks for which he remains physically capable.

As the government argued before the court, this language limits the plaintiff to routine, repetitive tasks, and that is clearly included in the RFC. The remaining language does not provide any significant limitations at all – certainly not limitations that are necessarily inconsistent with the RFC.

The plaintiff then points to Dr. Charles Small's report who found the plaintiff's knee pain to diminish significantly his ability to complete routine, repetitive tasks. Dr. Small also found the plaintiff had significant limitations in his ability to relate appropriately to peers and supervisors. After discussing these reports, the plaintiff argued, "[t]his is the exact type of situation contemplated by the . . . caselaw as to when an ALJ should exercise their affirmative duty to develop the record and order a consultative examination." The court, however, does not agree and sees the plaintiff's

argument as one asking the court simply to reweigh the evidence. *Copeland v. Colvin,* 771 F.3d 920, 923 (5thCir. 2014) (explaining the court is not to reweigh the evidence or substitute its judgment for that of the Commissioner). Because the court does not see the state agency physician's report as inconsistent with the ALJ's RFC, the court does not agree with the plaintiff that there was no evidence to support it. Indeed, there were hundreds of pages of medical records from the VA hospital addressing the plaintiff's impairments.

It should be pointed out that this initial argument addressed almost exclusively the plaintiff's nonexertional limitations, and the ALJ went to great lengths to explain that while the plaintiff did suffer from depression and posttraumatic stress disorder, these impairments had improved dramatically with treatment, and the records support that finding. For instance, the plaintiff was described as "motivated to increase his recreational activities with outpatient programs and volunteer opportunities within his community." Other times he reported he was "doing much better and mood overall has improved. Anxiety has decreased since being on Prozac and has had no further panic attacks. Sleeping well with rx and nightmares under control with prazosin." Because these findings and other similar ones were consistent with the state agency physician's opinion, the ALJ found that opinion persuasive, and this court finds substantial evidence supports that decision.

2. *The Hypothetical*

Next, the plaintiff argues the ALJ erred when he failed to incorporate all of his limitations into the hypothetical question posed to the vocational expert. As with his first

5

argument, the plaintiff refers specifically to the language quoted *supra* and provided by the state agency physician. The plaintiff then argues, [t]here was never a question posed to the VE with the limitations that were in the state agency RFC." Referring to that language again, the plaintiff highlights that the state agency physician opined the plaintiff needed "non-confrontational supervision" and "minimal interaction with others."

It must be noted first that the RFC did include the plaintiff could work with only "occasional public contact." So clearly the ALJ took the physician's language into account. Also, the ALJ noted in his opinion the records that support his mental impairments were under better control once the plaintiff began taking medication and seeking other forms of treatment.

Finally, the law makes certain that an ALJ does not disregard evidence or ignore potential limitations, but it does not require him to list and reject every possible limitation. *See, e.g., McCoy v. Astrue,* 648 F.3d 605, 614 (8th Cir. 2011). In the present case, the evidence was clear that the plaintiff's impairment responded very well to treatment, and the ALJ took this into account. Consequently, based on the record as a whole and with the limitation provided in the RFC, the court finds the hypotheticals posed to the VE were sufficiently precise in this case.

3. <u>Weight to the non-examining physician</u>

Next, the plaintiff argues the ALJ erred when he gave greater weight to the non-examining state agency physician's opinion than the opinion of a physician who actually examined him. At the outset the court notes this is the first case before it in which the plaintiff filed his application subsequent to March 27, 2017, and thus, the first case in

6

which a number of new regulations apply, specifically those rules regarding the evaluation of medical evidence.

To be sure, the new rules provide that the administration will continue to consider all of the evidence it receives, including medical opinions. However, for claims filed on or after March 27, 2017, the administration will no longer give any specific evidentiary weight to medical opinions. Put another way, this court will no longer be forced to guess at exactly what an ALJ intended when he gave an opinion "some" weight or "little" or "great" weight. Such terms are by definition vague and made decisions in the federal courts more difficult and undoubtedly sometimes inconsistent. Also, largely because these terms could be interpreted in more than one way, parties spent the bulk of their time and effort addressing these portions of an ALJ's opinion. The administration noted: "The current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources and instead focus on the persuasiveness of the evidence itself.

Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s). But while the new rules were written to simplify the process, applications, of course, will continue to include voluminous evidence, and they must address that evidence. The new rules are not in place to allow the administration or the reviewing courts to ignore evidence any more than they could

have done under the previous rules. The new rules were drafted to provide the administration and reviewing courts a better structure to follow, one that not only would allow an ALJ to make his reasoning clearer but also one that would allow the reviewing court a better understanding of exactly what the ALJ *meant*. Moreover, the new rules take into account that healthcare today has evolved. Unlike in years past, today many patients do not see only one healthcare provider such as their family physician. Today much of the evidence now appearing with applications includes reports from numerous medical sources, including the family physician, or a treating specialist, or a nurse practitioner, and many others, and the courts will look at all of these. How the ALJ's will consider these various portions of the record will undoubtedly be clarified as more cases are examined and more cases are reviewed, but what is clear is the Administration will not be considering whether one medical opinion should be given more weight than another. Instead, the ALJs will be looking at the entire record and considering the factors provided in the new regulation at 20 C.F.R. § 1520c.

>Specifically, the factors they will consider are as follows:
>
>(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), he more persuasive the medical opinions or prior administrative medical finding(s) will be.
>(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>(3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.
>>(i) Length of the treatment relationship. The length of time a medical source has treated you may help

> > demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
> > (ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
> > (iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
> > (iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).
> > (v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.
> (4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
> (5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c (2019).

While these are the factors the courts will consider, the regulations further provide that the factors of supportability and consistency are the most important ones they will use to determine whether a medical opinion is persuasive. What is also important --

9

especially to reviewing courts -- is how the ALJ will articulate his findings. The regulation addresses that as well, providing that the Administration will always explain how it considered the supportability and consistency factors for a medical source's opinion. However, they are not required to explain how they considered any of the remaining factors. That is not to say that an ALJ will never consider the other factors. There will undoubtedly be many instances in which supportability and consistency alone will not be enough. Certainly in those instances, one or more of the remaining factors must be addressed and discussed to provide substantial evidence to a reviewing court. In the present case, however, supportability and consistency were sufficient.

Again, here the plaintiff argues the ALJ erred when he gave more weight to the non-examining state agency physician's opinion than the opinion of a physician who actually examined him. As discussed, this is no longer a viable argument because the regulations now provide the ALJs are not to ascribe weight to any opinion at all whether it be great, some, little, or none. The reviewing court now looks to whether substantial evidence supports the ALJ's findings, and specifically when medical opinions are at issue, whether he addressed supportability and consistency in his decision. Here, the ALJ did precisely that. In his opinion, the ALJ addressed the medical opinions provided by the state agency physicians as well as that provided by Dr. Charles Small who examined the plaintiff. After going through Dr. Small's findings, the ALJ wrote that his opinion was not persuasive. He explained that "[w]hile it is supported by his own findings, it is not consistent with the claimant's medical history regarding his diagnoses, or with the claimant's longitudinal psychiatric treatment records which indicate that his PTSD is under better control with fewer breakthrough symptoms."

After going over the opinions from the state agency physician, the ALJ found them persuasive and "supported by the evidence, at the time it was written." The ALJ continued: "It is also generally consistent with the record as a whole, which fails to demonstrate that the claimant has any persistent and overwhelming mental functional limitations stemming from his severe impairments."

Accordingly, after examining the ALJ's opinion, the court finds substantial evidence supports his findings with respect to the medical opinions provided. The ALJ examined the opinions and looked to determine whether they were supported in the record and whether they were consistent with the record. The ALJ found the state agency physicians' opinions supported and consistent with the evidence, and thus, this court sees no reason to overturn that decision.

4. *VA rating*

Finally, the plaintiff argues the ALJ erred when he failed to consider the plaintiff's VA rating decision. In his decision, the ALJ wrote that "[t]he Veterans' Administration has concluded that claimant is 100 percent disabled based on his PTSD from his combat experiences, and other impairments. The Social Security Administration must consider all of the medical evidence but is not bound by administrative decisions and conclusions from other agencies under other rules and regulations." Again, the new regulations are relevant here. Specifically, 20 C.F.R. § 1504 applies which explains that not only is the Administration not bound by decisions made by other agencies, but that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency . . ." Because the Administration is not obligated even to discuss another agency's decision and because the court finds substantial evidence

11

supports the ALJ's decision as to the other issues raised, the court does not find this final argument compelling.

For all of the above reasons, a judgment affirming the decision of the Social Security Administration shall be entered.

This the 14th day of February, 2020.

/s/ David A. Sanders
U.S. MAGISTRATE JUDGE